ROBERTS *et al. v.* WADLEY, administrator, *et al.*

A will disposed of a life-estate, and contained the further provision: "Should all of my daughters marry, or should all the unmarried daughters depart this life, then, on the happening of either event, it is my will that the entire estate be divided equally between our then surviving children, the child or children of my deceased child to represent and take the share of the parent. . ." *Held,* that the words of survivorship contained in the latter clause did not refer to the death of the testator, but to the death or marriage of the last of the testator's unmarried daughters, and at the death of the last of such unmarried daughters the estate in remainder vested in the children of the testator then living and the children as a class of testator's children then deceased.

No. 3465. JULY 12, 1923.

Construction of will. Before Judge Searcy. Monroe superior court. September 27, 1922.

In 1875 W. M. Wadley executed his will, which was duly probated. Item 1 was as follows: "After all just and lawful debts that I may owe at my death are paid, I hereby give and bequeath all my estate, real and personal or mixed, to my wife Rebecca B.

Wadley, to be by her controlled and managed for the support and proper maintenance of herself and our daughters that may remain unmarried; should there remain any net amount income from the estate, after providing for such support and maintenance, then it is ·my will that my said wife make such use of it as may seem best in her judgment." Item 2 was as follows: "Should my said wife die leaving any of our daughters unmarried, it is my will that the estate shall be managed and controlled by the oldest unmarried daughter in case there should be more than one unmarried, for their equal support and maintenance, any net annual income from the estate, after such support and maintenance, to be used by said oldest daughter as may ̄seem best in her judgment." Item 3 was in part as follows: "Should all of my daughters marry, or should all the unmarried daughters depart this life, then, on the happening of either event, it is my will that the entire estate be divided equally between our then surviving children, the child or children of my deceased child to represent and take the share of the parent. . ." The testator died on August 8, 1882. The widow of the testator died on June 4, 1905. Sarah L. Wadley, the last unmarried daughter, died in November, 1920. W. O. Wadley, son of the testator, died on February 4, 1903, which was subsequent to the death of the testator and prior to the death of the widow, and also prior to the death of Sarah L. Wadley. W. O. Wadley left eleven children, three of whom died, leaving children, after the death of their father but before the death of Sarah L. Wadley. · Six of the children left by W. O. Wadley were born during the lifetime of the testator, one of whom was named for him. This was one of the three who predeceased Sarah L. Wadley. After the · death of Sarah L. Wadley the administrator with the will annexed upon the ·estate of the testator made a distribution, and filed with the court of ordinary his final report whereby certain children of deceased children of W. O. Wadley, including a child of the son of W. O. Wadley that was named for the testator, were given shares of the estate which their deceased parents would have taken under the will had they been in life. The children of W. O. Wadley who were in life at the time of the death of Sarah L. Wadley objected to the return filed by the administrator, on the ground that the grandchildren of W. O. Wadley last above mentioned were not entitled to participate in the distribution of the estate. The case,

coming on for decision upon appeal to the superior court, was tried by the judge without a jury, upon an agreed statement of facts in substance as above indicated. The judge sustained the report of the administrator, and the caveators excepted.

*Persons & Persons,* for plaintiffs in error.

*Willingham & Willingham* and *Hall, Grice & Bloch,* contra.

ATKINSON, J. The exception is to the judgment allowing the grandchildren of W. O. Wadley, being great grandchildren of W. M. Wadley, testator, to participate in the distribution of the estate. The correctness of the decision depends upon a proper construction of the will. An estate in remainder is one limited to be enjoyed after another estate is determined or at a time specified in the future (Civil Code, § 3674), and is either vested or contingent, A vested remainder is one limited to a certain person at a certain time or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person or upon an event which may or may not happen. Civil Code, § 3676. The law favors the vesting of remainders in all cases of doubt. In construing wills words of survivorship shall refer to the death of the testator in order to vest remainders, unless a manifest intention to the contrary appears. § 3680; *Moore* v. *Cook,* 153 *Ga.* 840 (113 S. E. 526). Whether a testator manifestly intends that words of survivorship should refer to the death of another in a given case will depend upon the language of the will. In *Dudley* v. *Porter,* 16 *Ga.* 613, words of survivorship expressed in a deed were held to refer to the death of one other than the grantor. It was a case where a father, by deed, gave a negro girl to his daughter " M. S. D., for and during her natural life, and to the heirs of her body, if any she should have, by W. S. D.," and afterwards, the grantor provided, that " should the said M. S. D., die without a bodily heir by W. S. D., then the aforesaid negro girl and her increase shall then be divided among my heirs, share and share alike." It was held that these words conveyed a life-estate to M. S. D., a fee in the property to her children by W. S. D., if any were living at her death; and if no such children were then living, the same was to be divided among the heirs general of the grantor, as directed. In the opinion it was said: " The word ' then ' is sometimes used as a word of reasoning — a particle of inference connecting the consequence with the premises,

and sometimes as an adverb of time. In the first sense, it is equivalent to the expression, 'in that event,' or 'in that case,' or 'therefore;' in the other, it means 'at that time,' or 'immediately afterwards.' When, in the first sense, interposed between two limitations, it can have no effect in restricting the limitation to issue living at the death. (Beauclerk *vs.* Dormer, 2 Atk. 308. Candy *vs.* Campbell, 8 Bligh, N. S. 469.) Though the word was held, in these cases, to be there used as a word of inference, yet the reasoning, both of Lord Hardwick and Lord Brougham, shows that if the word be used as an adverb of time, it may then be regarded as having the effect of restricting the limitation to issue living at the death. In the sentence which we are considering, and which is quoted above, the word is of course first used as a word of reasoning; but because this is so, it is evident that when in the same connection it is repeated, it is a word of time. Unless this be so, we attribute no meaning to its second use. It is a maxim of law, that effect will be given to all the words of an instrument, if this can reasonably be done. Ut res magis, &c. The sentence, therefore, may properly be read, 'should the said Mariah S. Dudley die without a bodily heir by W. S. D., in that event the aforesaid property shall, at that time, be divided,' &c."

Among other cases applying the principle and giving such construction to the word "then" are the following that involved construction of wills: *Gibson* v. *Hardaway,* 68 *Ga.* 370; *Patterson* v. *Patterson,* 147 *Ga.* 44 (92 S. E. 882) ; *Nottingham* v. *McKelvey,* 149 *Ga.* 463 (100 S. E. 371) ; *Curles* v. *Wade,* 151 *Ga.* 142 (103 S. E. 1). These cases were considered in the recent case of *Moore* v. *Cook,* supra. In the opinion in that case the cases above cited were referred to as follows: " In *Patterson* v. *Patterson,* the testator provided that his wife should reside on and have a life-interest in his homestead, and at her death he wished his homestead to be the property of his daughter, Mary Jane Patterson. Then follows this provision: ' If the said Mary Jane Patterson should die without child or children, then the property or the proceeds of the same to be the property of my son, David W. Patterson, or, in the case of his death, the property of his children.' Here the words of survivorship referred to the death of the tenant in remainder. The use of the word 'then' clearly indicates that a fee-simple estate was vested in the daughter, subject to be di-

vested if she died without child or children. In *Nottingham* v. *McKelvey,* the testator gave to his nephews certain land. By a codicil, executed the same day the will was executed, he added this provision: 'I will and desire that if my two nephews,' to whom he had given these lands, 'should die without heirs of their body, then . . all my property that is willed and given to them go and be the property of' other named persons. Here the words of survivorship clearly indicated that they referred to the death of these legatees; and that if they died without heirs of their body, then the estate was to go to the other named persons. The use of the word 'then' clearly indicates that the testator meant that the fee vested in his nephews would be divested when they died without heirs. In *Gibson* v. *Hardaway,* the word 'then' was used; and this court held it was an adverb of time, and referred to the death of the daughters. This court said: 'But the natural, plain, simple construction is that the 'then' used here is an adverb of time, and means at the death of the daughters.' In *Crumley* v. *Scales* [135 *Ga.* 300, 69 S. E. 531] this court in referring to the last-mentioned case said: ' In the will construed in the *Gibson* case, the word 'then' was employed by the testator in referring to the contingency of death of one or both of the devisees; and in the decision rendered by the trial judge (which was quoted in full and was approved in the opinion handed down by this court) great stress was laid on this word as being 'an adverb of time,' and denoting an intention on the part of the testator to make the reversion referred to effective according to whether or not at the death of one of the devisees, whenever occurring, child or children should then be left by such devisee.' In the will which we are now construing no such word is used. . . In *Curles* v. *Wade,* 151 *Ga.* 142 (106 S. E. 1), the testator devised land to his son, directing that the same 'belong and the title vest in my son . . immediately after my death; but if he should die without a child or children, then in that case the above-described property be divided equally among my nieces and nephews.' Here the court held that the language, 'then in that case,' referred to the death of the children, and not to that of the testator."

In the light of the foregoing the will under consideration must be construed. In Items 1 and 2 a life-estate was created in the wife of the testator, and provision made for support of his

daughters so long as they lived without having married. No mention was made of any estate in remainder in these items. A remainder estate was created and disposed of in Item 3, the testator employing these words: ". Should all of my daughters marry, or should all the unmarried daughters depart this life, then, on the happening of either event, it is my will that the entire estate be divided equally between our then surviving children, the child or children of my deceased child to represent and take the share of the parent. . ." The word "then" was used twice, and in the second instance, that is in the clause "divided equally between our then surviving children" it was employed as an adverb of time. The estate in remainder by the language of the will was contingent, because it was uncertain as to the person who would take until the death of the last of the testator's unmarried daughters. "Then," at the death of the last of the testator's daughters who did not marry, the persons to take under the will were definitely ascertainable, and there was no longer uncertainty as to the person who would take. The words of survivorship manifestly referred to the marriage of the last of the daughters to marry or to the death of the last unmarried daughter, and not to the death of the testator. As Sarah L. Wadley died without having married and was the last of the unmarried daughters, the estate in remainder became vested at her death indefeasibly. The persons entitled to take in remainder were children of the testator who were living at the death of Sarah L. Wadley and the child or children of any child of the testator deceased at that time, the latter to take only the share which their deceased parent would have taken had he not died. This would include children of W. O. Wadley, a son of the testator, who survived the testator and predeceased Sarah L. Wadley, but would not include W. O. Wadley himself or his grandchildren. There was never any vested remainder subject to be divested, as appears to have been the view of the trial court; but when the contingency happened that caused the remainder estate to vest, it vested indefeasibly in the persons appointed to take. It follows that the trial court erred in holding that the grandchildren of W. O. Wadley were entitled to participate as distributees under the will.

*Judgment reversed. All the Justices concur.*